UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
TERRE HAUTE DIVISION

| | |
|---|---|
| **MICHAEL R. DICKSON,**<br><br>　　**Plaintiff,**<br><br>　　*vs.*<br><br>**CAROLYN W. COLVIN, Commissioner of Social Security,**<br><br>　　**Defendant.** | CAUSE NO.  2:15-cv-87-DKL-JMS |

**ENTRY**

In July 2012, plaintiff, Michael R. Dickson, applied for disability-insurance benefits and a declaration of a period of disability under the Social Security Act, alleging a disability that began on March 9, 2012.  The defendant Commissioner of Social Security denied his claims and Mr. Dickson brought this suit to obtain judicial review of those denials.  The parties consented to this magistrate judge conducting the proceedings and entering final judgment, and the district judge referred this Cause accordingly.  *Notice, Consent, and Reference of a Civil Action to a Magistrate Judge* [docs. 13, 15, 16].  Mr. Dickson filed a *Motion for Summary Judgment* [doc. 18], which the Court treats as his brief in support of his complaint for review of the Commissioner's decision.

**Standards**

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d

467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A person will be determined to be disabled only if his impairments "are of such severity that he is not

2

only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). 20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966. The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B) and 1382c(a)(3)(G). 20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the applicant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administra-

tion has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions. At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may

4

not be used to determine disability at that level. Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

## Background

A hearing before an administrative law judge ("ALJ") was held in December 2013, during which Mr. Dickson and a vocational expert testified. (R. 29.) Mr. Dickson was represented by counsel during the administrative proceedings and he is represented by counsel in this Cause. The ALJ issued his decision in January 2014.

The ALJ initially found that Mr. Dickson meets the insured-status requirement for disability-insurance benefits through December 31, 2016.

At step one of the sequential evaluation process, the ALJ found that Mr. Dickson had not engaged in substantial gainful activity since his alleged disability-onset date, March 9, 2012. At step two, he found that Mr. Dickson has the severe impairments of arthropathy (any joint disease), chronic pain syndrome, and obesity. The ALJ found that Mr. Dickson's additional impairments of hypertension, elevated Alanine Transaminase, and acute neck pain were non-severe because either the symptoms resolved or became asymptomatic with conservative treatments. He also found that the fibromyalgia that is referenced in some medical records is not a medically determined impairment because he did not find evidence of the defining criteria under Social Security Ruling 12-2p. (R. 18.) At step three, the ALJ found that Mr. Dickson's impairments, severe and non-severe, singly and in combination, do not satisfy the criteria of any condition in the listing of impairments.

For the purposes of steps four and five, the ALJ determined Mr. Dickson's residual functional capacity ("RFC"). The ALJ found that Mr. Dickson has the capacity to lift

and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The ALJ found additional non-exertional restrictions which are not relevant in light of Mr. Dickson's arguments.

At step four, the ALJ found that this define RFC allows Mr. Dickson to perform his past relevant work as a cashier checker as the job is generally performed in the national economy. Therefore, the ALJ found that Mr. Dickson is not disabled, and he did not proceed to step five.

## Discussion

Mr. Dickson argues five errors in the ALJ's decision.

**1. Selective discussion of the evidence.** Mr. Dickson argues that the ALJ did not consider all the medical evidence in the record and ignored evidence that warranted specific discussion. He gives two instances.

First, while the ALJ gave Dr. Haber's assessment great weight "because it is consistent with his own progress notes and with the overall evidence," (R. 21), the ALJ erred by citing evidence from only Dr. Haber to support his conclusion that Mr. Dickson's pain was not severe. Specifically, the ALJ relied solely on evidence from Dr. Haber to support his conclusion that "[a]side from medication therapy, the claimant has not been prescribed other treatment, nor has he been referred to other specialists, such as a bone and joint specialist, or a rheumatologist." (*Id*.) This was error, Mr. Dickson argues, because

7

the ALJ ignored the Oswestry Low Back Pain Disability Questionnaires, dated June 13, 2013 and August 5, 2013, the scores of which Dr. Haber interpreted as showing that Mr. Dickson is "severely disabled." (R. 349, 354.)  However, the Oswestry Low Back Pain Disability Questionnaire is simply a questionnaire completed by the patient on which the patient records his descriptions of his subjective symptoms.  The responses and scores are not the physician's medical findings or opinions of his patient's condition.  Dr. Haber merely noted that the scores of the questionnaires — in other words, Mr. Dickson's own descriptions of his symptoms — show that Mr. Dickson asserts that he is severely disabled.  Mr. Dickson's descriptions of the severity of his symptoms and their resulting functional limitations are well represented in the record, including in the hearing transcript and the ALJ was well aware of them.  It was not error for the ALJ to not mention them in his discussion of Dr. Haber's findings and opinions because they do not represent Dr. Haber's findings and opinions.

Second, Mr. Dickson argues that, in his evaluation of Mr. Dickson's asserted fibromyalgia, the ALJ ignored Dr. Gopala's diagnosis of fibromyalgia and a state-agency physician's finding on reconsideration review that fibromyalgia is one of Mr. Dickson's severe impairments.  The records that Mr. Dickson cites for Dr. Gopala's diagnosis of fibromyalgia, (R. 314-18), contain no such diagnosis.  Although the ALJ did not specifically address the inclusion by Dr. Brill, a state-agency reviewing physician, of fibromyalgia as a severe secondary diagnosis on his reconsideration review of Mr. Dickson's appli-

8

cation, (R. 73), the ALJ did place "great weight" on Dr. Brill's and Dr. Ruiz's (initial review) RFC assessments that found that Mr. Dickson was capable of light exertional level work and not disabled. (R. 23, 63-66, 75-78.) Dr. Ruiz, on initial review, did not include fibromyalgia as one of Mr. Dickson's severe impairments. Dr. Brill's addition of the impairment on reconsideration review appears to have been the result of receiving additional information that Mr. Dickson had been diagnosed with fibromyalgia in July 2012 and was currently on mediation for it. (R. 69-70, 73.) The reconsideration documents contain no supporting explanation of an evidentiary basis for Dr. Brill's finding that fibromyalgia is a severe impairment. Because Dr. Brill found that Mr. Dickson was not disabled, it is difficult to deem the ALJ's omission of Dr. Brill's inclusion of fibromyalgia as a severe impairment as anything other than harmless. Mr. Dickson fails to show why the appearance of fibromyalgia as a severe impairment in the reconsideration papers was significant enough, in the context of the record as a whole and the ALJ's decision, to require specific address by the ALJ.

Mr. Dickson has now shown that the ALJ erred by selectively discussing and/or ignoring evidence.

**2. Credibility finding based on lack of treatment.** Mr. Dickson argues that the ALJ erred by discrediting his descriptions of disabling symptoms and limitations based on his lack of medications, lack of treatments during emergency-room visits, and lack of referrals to specialists, without inquiring about the reasons for the lack of treatments, as

9

S.S.R. 96-7p requires. Mr. Dickson asserts two possible reasons excusing his lack of medications and treatments: side effects from several of his medications, (R. 343), and financial hardship. He argues that the ALJ ignored his "great efforts in seeking treatment under heavy financial burden." *Motion for Summary Judgment* [doc. 18] ("*Plaintiff's Brief*"), at 10.

The ALJ specifically recognized that Mr. Dickson has "limited financial resources, which can be an obstacle to treatment," (R. 23), but he added that "limited financial resources do not explain the lack of significant findings on numerous examinations," (*id.*) Thus, the ALJ was aware of Mr. Dickson's limited resources. However, Mr. Dickson does not assert or argue now that he did not follow prescribed treatments, take medications, see recommended specialists, or seek recommended follow-up examinations because he could not afford them. Similarly, while Mr. Dickson asserts that he had negative side effects of some of his medications, he does not assert that that is the reason he did not take them — *i.e.*, that the side effects were worse than the pain. He did report that medications reduced his pain to low and tolerable levels, but he does not cite in the record where he advised the ALJ that he could not take his prescribed medications. He was represented by counsel and it was reasonable to assume that he presented all useful information.

In this context, it was not unreasonable or erroneous for the ALJ to rely on failure to follow prescribed treatments or seek recommended care as a reason, among other rea-

10

sons, to find that Mr. Dickson's symptoms and limitations were not as severe as he alleged.

**3. Assessment of fibromyalgia.** As noted, the ALJ found that Mr. Dickson's fibromyalgia is not a medically determined impairment. (R. 18.) However, his discussion is cursory and conclusory. He summarizes S.S.R. 12-2p's standard for evaluating fibromyalgia then writes only that he "does not find corresponding evidence of the criteria for establishing this diagnosis under Social Security Ruling 12-2p" and that evidence of the criteria "is not evident from the record." (*Id*.) With regard to an impairment such as fibromyalgia that is subjective and least susceptible to objective analysis, a careful, thorough, and precise evaluation of the evidence is required. Mr. Dickson itemizes several items from the record that correlate to the criteria of S.S.R. 12-2p. *Plaintiff's Brief*, at 12. This evidence, at least, requires specific address by the ALJ.

Mr. Dickson's claim will be remanded to the Commissioner for reconsideration, and re-articulation of her evaluation, of the record evidence relating to fibromyalgia. The Court does not find that the record supports fibromyalgia as an impairment or as a severe impairment. The remand is only to obtain an adequate articulation of the evidence and the ALJ's reasoning in the context of this inherently subjective and amorphous impairment.

**4. Credibility finding based on lack of objective evidence.** Mr. Dickson argues that the ALJ erred when he discounted Mr. Dickson's credibility regarding his subjective symptoms based solely on a lack of confirming objective evidence, which is contrary to

11

20 C.F.R. § 404.1529 and S.S.R. 96-7p.  Mr. Dickson is correct that it is improper for an ALJ to require objective confirmation of subjective symptoms, but that is not what the ALJ did.  While lack of confirming objective evidence cannot alone be a reason for discrediting a claimant's descriptions of subjective symptoms, it can be one of the factors in an ALJ's consideration.  The ALJ's decision reveals that he not only considered the lack of confirming or consistent objective evidence (*e.g.*, no joint swelling, normal gait, no noted reports to medical providers of ambulatory limitations, no medically prescribed functional restrictions) but that he also considered Mr. Dickson's activities of daily living, inconsistent actions (*e.g.*, receiving unemployment compensation) and testimony, evidence of exaggeration of symptoms (*e.g.*, use of a non-prescribed cane), Mr. Dickson's failures to follow prescribed treatments; lack of providers' referrals for more aggressive or specialized care; and Mr. Dickson's failure to seek advanced treatments.  Mr. Dickson has not shown that the ALJ erred by relying solely on the lack of confirming objective evidence to find his descriptions of disabling symptoms and limitations to be not entirely credible.

    **5. Failure to consider obesity.**  Mr. Dickson argues that the ALJ failed to consider the effect of his obesity into his RFC finding and, thus, failed to consider the combined effect of all of his impairments.  He acknowledges that the ALJ found obesity to be one of his three severe impairments, (R. 17), and that, in his RFC discussion, the ALJ specifically found that "when combined with his other impairments, the claimant's obese state negatively impacted his functional abilities," (R. 21).  However, Mr. Dickson complains that

"Dickson's RFC also did not mention Dickson's obesity," the ALJ "did not discuss Dickson's [obesity] on his ability in the hearing for hypothetical questions," and that, despite the ALJ's specific finding regarding the impact of his obesity, "there was no any [*sic*] further discussion and explanation for the negative impact on Dickson's functional capacity." *Plaintiff's Brief*, at 16.

If, by "Dickson's RFC also did not mention Dickson's obesity," Mr. Dickson means that the ALJ's RFC definition does not mention obesity, then his argument fails. The RFC definition does not mention any of Mr. Dickson's impairments or explain the impairment basis of each individual ability and limitation, and it is not expected to. If Mr. Dickson means that the ALJ's RFC discussion does not mention obesity then, as pointed out above, he is simply incorrect. Likewise, ALJs' hypotheticals posed to vocational experts at hearings are not expected to include discussions of the causal links between each of a claimant's impairments and each defined ability and limitation. The ALJ found that obesity was a severe impairment for Mr. Dickson and specifically stated that, when combined with his other impairments, it negatively impacted his functional abilities. The ALJ defined RFC restrictions to accommodate his impairments, including obesity. The Court is convinced that the ALJ considered the impact of Mr. Dickson's obesity on his RFC definition. In addition, Mr. Dickson does not identify any particular RFC limitation that should be broadened in any particular way or any new restriction that should be added.

Mr. Dickson has not shown that the ALJ erred by failing to properly consider or account for his obesity.

## Conclusion

Mr. Dickson's claim will be remanded to the Commissioner for reconsideration of Mr. Dickson's alleged fibromyalgia. The Commissioner's decision is affirmed in all other respects. Procedurally, Mr. Dickson's *Motion for Summary Judgment* [doc. 18] is **GRANTED in part** and **DENIED in part**.

DONE this date:  09/30/2016

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.